Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur; HISCOCK, J., in result only.

---

## In re MATHER'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department. January 5, 1904.)

1. INHERITANCE TAX — RIGHT TO CLAIM UNDER EITHER WILL OR DEED — ANCESTOR'S CLAIMING UNDER WILL — EFFECT AS TO HEIRS.

A will gave testator's nephew a life estate, with power of appointment by will, failing which the property should go to his heirs. In the appraisal of the estate the nephew testified that a certain piece of real estate belonged to the testator, and a tax was assessed on the nephew's life interest therein, but suspended as to the residuary interest until his death, as his estate would be liable therefor only in the event of his exercising the power of appointment, and otherwise the liability would attach to his heirs. After his death a deed of the property from the testator to him was discovered among his papers. *Held*, that his heirs were

not bound by his electing to claim under the will, but might for themselves claim under the deed, and thereby avoid the residuary tax as already assessed, though they could not avoid the tax on the nephew's life interest.

Hiscock, J., dissenting in part.

Appeal from Order of Surrogate, Oneida County.

Petition for the setting aside of an inheritance tax levied on the estate of Joshua Mather, deceased. From an order (84 N. Y. Supp. 1105) modifying the original taxing order the administrators of Charles W. Mather, deceased, who was a devisee under the will of Joshua Mather, appeal; and from an order granting the application of Mrs. McChesney, a daughter of Charles W. Mather, for a vacation of part of the assessment, the State Comptroller appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

R. S. Johnson (C. R. Coville, of counsel), for State Comptroller.
Linesley & Mackey, for appellants.
Josiah Perry, for respondents.

STOVER, J. Two appeals herein from an order of the Oneida County Surrogate are presented. The administrators of Charles W. Mather appeal from that part of the order which modifies the original taxing order. The State Comptroller appeals from that part of the .order which granted the application of Mrs. McChesney, a daughter of Charles W. Mather.

Joshua Mather died in August, 1893, leaving a will, which was admitted to probate September 11, 1893. The will of Joshua Mather, after certain other provisions, by the twenty-third clause thereof gave to Charles W. Mather, a nephew of the testator, the possesion, use, income, profits, and rents of the residuary estate during his lifetime, and the entire control and management of the estate, personal and real, as he might deem for his best interests and those of the persons who, under the will, would be ultimately interested in the estate, of which he was to have the income during his lifetime; authorizing him to conduct the business in the name of the testator or otherwise, and empowering the said Charles W. Mather to make such disposition of the estate as he might deem wise among his descendants whom he might leave, and in such proportions and amounts as he might desire. He further provided that if for any reason the said Charles W. Mather failed to make such will, or if such will was not admitted to probate, the property enjoyed by said Charles W. Mather during his lifetime should go to the persons whom the said Charles W. Mather might leave as his next of kin and heirs at law at the time of his death, in the same manner and proportions as if the said Charles W. Mather had been the absolute owner thereof at the date of his death, and had died intestate and unmarried. Charles W. Mather was also constituted sole executor of the will, the twenty-fourth clause of said will providing as follows: "And he [referring to said executor] shall in no event be required to furnish any bond or security as such executor, and no person or court shall compel him to

account for how he manages my estate, or how he invests the same as executor and legatee and devisee under this my last will and testament." Upon the completion of the probate of the will of Joshua Mather the estate was appraised, and Charles W. Mather assumed the duties of executor, and continued such during his lifetime.

Upon the appraisal of the estate Charles W. Mather was examined, and testified that Joshua Mather at the time of his death was the owner of certain real estate in the city of Utica, and known as the Arcade property, being generally described as about 120 feet on Genesee street and 150 feet deep. This Arcade property was appraised at $175,000, and the tax upon the life interest of Charles W. Mather was fixed at $4,852. The tax upon the residuary interest was suspended until the death of Charles W. Mather, as it was uncertain to whom the property would descend. If it was disposed of by the will of Charles W. Mather, his estate would be liable for the tax, and, if not, then the persons to whom it descended would be chargeable therewith. Charles W. Mather died in November, 1899, intestate, not having exercised the power of disposition given by the will. The petitioners are the heirs of Charles W. Mather.

After the death of Charles W. Mather a deed executed by Joshua Mather to Charles W. Mather, conveying the Arcade property above mentioned, was found among the papers of Charles W. Mather. The petitioners thereafter, upon investigation, made an application to the Surrogate's Court to have the assessment set aside, the Arcade property stricken from the proceedings had upon the assessment, to correct the report and order by striking therefrom the amount included therein as a tax upon the Arcade property, and for other relief. The Surrogate, upon such application, after taking evidence, modified the order, in so far as it assumed to assess a tax against the heirs of Charles W. Mather, but refused to set aside or modify the assessment as against Charles W. Mather. This appeal was thereupon brought.

We think the order of the surrogate was right. The evidence clearly showed that the deed from Joshua Mather to Charles W. Mather was made and delivered during the lifetime of Joshua Mather, and, although it was not recorded until after the death of Charles W. Mather, there was nothing to impeach its validity, except the statement made by Charles W. Mather upon the assessment proceedings.

It is true the evidence that he made a statement is not contradicted, nor is it explained, and it may be quite possible that, if the original parties were able to speak, some explanation could be given of that statement; but, whatever force it might have against Charles W. Mather, his heirs, the petitioners herein, would not be bound by such statement.

Charles W. Mather, for some undisclosed reason, determined to ignore the absolute title for the time being, and submit to the imposition of the tax. He was under no restraint or duress. Whatever he did was voluntary, and, presumably, for what he deemed to be his best interests. His heirs, however, have the same right that he had, namely, to rely upon their title under the will of Joshua Mather, or upon the deed from Joshua Mather. Unlike their ancestor, they prefer to rely upon the deed, and they are not foreclosed from doing

this by any act of Charles W. Mather. It is true that as to the property they acquire no better title than Charles W. Mather had, but as to the method of the enjoyment of their estate they are quite independent of, and not bound by any acts of, Charles W. Mather. The statement and act of Charles could only affect his estate and his enjoyment of the property, and therefore the tax was properly levied against him, as, upon his own statement, he claimed under the will; but he did not assume to bind his heirs, nor would they be estopped by his statement had he so assumed. No tax has ever been assessed against them, they have promptly asserted their rights, and, upon the first opportunity to be heard, have elected to stand upon their title under the deed. They have been guilty of no laches, and no valid reason has been presented for estopping them from so doing.

The order of the surrogate must be affirmed, with $10 costs and disbursements. All concur, except HISCOCK, J., who dissents from that portion of the order which relieves the heirs from taxation upon the Arcade property.